Ms. Minch, excuse me, we'll hear from you first. Thank you, Your Honor. May it please the Court, I am Julia Minch, here today on behalf of 11 Minnesota cities who in turn represent over 10% of the population of this state. We come before you seeking reinstatement of our claims for relief against companies that knowingly converted a toxic waste into a product that would be applied to the ground outdoors, knowing that product would wear away over time and spread into the environment. Turning first to Your Honor's question regarding the finality of the orders below, the bottom line is the cities seek to continue this case against all of the defendants or none of them. As to the order regarding personal jurisdiction, Record Document 204, the cities asked the Court to re-evaluate that order multiple times through a request for reconsideration, multiple requests for jurisdictional discovery, and finally a motion to amend the complaint itself. All of those efforts were denied. Now, ultimately that order was issued without prejudice at Record Document 347, but in that This amounted to a clear and unequivocal manifestation by the trial court of its belief that the decision made was the end of this case. Well, I think the concern is the tolling agreement and the provision that some of the claims will spring back to life depending on how the appeal is resolved, and in particular the claims against the manufacturers where you tried to get the Rule 54B certification that the district court denied, as I recall. Why isn't that a manufactured effort to create a final judgment that won't work under our cases? Well, again, Your Honor, the cities seek to litigate these claims against all of the defendants or none of them, and that very tolling agreement that you mentioned binds the cities to do just that. Now, this Court held in Great Rivers Co-op, that's 198 Federal 3rd, 685, a dismissal without prejudice of additional defendants does not do the same violence to the policy against piecemeal appeals as a dismissal without prejudice of the remaining claims against the same defendants. So the cities are not asking, putting this Court in the awkward position of adjudicating certain claims as the defendants when those same defendants are facing pending claims in the court below. So let me understand. I'm confused about it. If we affirm here those dismissed claims remain dismissed and the judgments remain in place, is that correct, against those that were dismissed without prejudice? Yes, Your Honor. Under the tolling agreement, we are barred from resuming those claims. If we reverse, the judgments below are vacated and the claims, as Judge Colleton suggested, spring back to life. That's my understanding, and if I'm botching it, please let me know. Yes, Your Honor, that would be correct. So we have certain defendants below that were dismissed without prejudice. In a very general sense, isn't it odd that, and I may be misstating this, our jurisdiction hinges on how we decide the case, or is that misstating the situation here? Because, you know, the judgment will be vacated if we reverse. And if the appeal were coming up in that context, where you had live claims, we wouldn't have jurisdiction. Well, it's misstating the situation a little bit, Your Honor, because the court below did dismiss the refiners on products liability, and the court below did dismiss Beezer on the basis of personal jurisdiction. The only claims that are at issue in this appeal that are relevant to the manufacturers below are the fraud claims. But we are barred from pursuing those claims, even if this Court does reverse on the fraud claims, because the tolling agreement specifically defines success on appeal as getting the refiners back. And so if this Court reverses and we get the refiners back, we are able to proceed against all of the defendants in one cohesive case. In our view, that was a much more efficient use of judicial resources. Well, lawyers always think it's more efficient if they can appeal right away, but the final decision rule is designed to prevent that and to require litigating everything to conclusion. Yes, Your Honor, but if you look at Minnesota Pep Readers, the Fairbrook cases, West American Insurance Company, Ruppert and Rossley, all of those cases, we had claims that were pending below or partially resolved below, and then the appellants tried to take those same defendants to appeal in the hopes of reinstating claims. For example, in Ruppert, the appellant actually settled its claims for $80,000 against that appellee and then sought to appeal class certification so that other claims could be brought against that same appellee below. That is not the case here. Here we have — The key distinction here is it was dismissed against parties, different parties. Is that the distinction here that matters as opposed to claims? Yes, Your Honor. Again, if you look at Great Rivers Co-op, the Court here, the Eighth Circuit held a dismissal without prejudice of additional defendants does not do the same violence to the policy against piecemeal appeals as a dismissal without prejudice of claims. Well, we'll have to consider that. Thank you, Your Honor. So as to those claims, the cities presented plausible allegations regarding the refiner's defective component, a prime affache case as to jurisdiction over Beezer, and plausible allegations regarding the refiner's fraud. So turning first to the issue of product liability and negligence, the core error made by the District Court below is an easy one for this Court to fix. The refiner and manufacturer defendants should have been treated equally. The manufacturer — the court below concluded that the manufacturers could have foreseen the harms to the cities and had a duty to avoid that harm. The same is true of the refiners at issue here in this appeal today. As it was in the complaint, these refiners specially formulated the refined coal tars that actually make pavement sealants defective, plainly intending their refined coal tars to be the key ingredient in that product while knowing the risk caused by coal tar-based pavement sealants. Now, together with Beezer, the refiners here today are the source of nearly all of the refined coal tar ever used to make coal tar pavement sealants in the United States. And together with the manufacturers, the PCTC refiners make up almost the entirety of the Technology Council, a trade organization that specifically pushes for the continued use of refined coal tar in pavement sealants. And yet, unlike the manufacturers below, the District Court dismissed these refiners. And that was an error. The District Court erred in misreading the complaint, overemphasizing the fact that refined coal tars can be made for use in a variety of products. But the cities specifically alleged that the refined coal tars at issue in this lawsuit were specially formulated for use in pavement sealants. This is not a fungible commodity. Pavement sealants are the only place that these refined coal tars can be used. And that means that the refiners made a defective component. And that means they can be liable to anyone who is exposed to foreseeable danger arising out of that intended use. Now, again, the District Court found that the manufacturers could foresee those harms and found the city's allegations plausible based on two key facts. One was the USGS study in 2004. The other was participation in the PCTC. Now, those facts apply to most of the refiners, not to Beezer specifically. But of course, Beezer was a refiner and a manufacturer, and so therefore could foresee the use of its refined coal tar in its coal tar pavement sealants. But as to the PCTC refiners, through the Pavement Codings Technology Council, they participated in the design of coal tar pavement sealants and the integration of refined coal tar into coal tar pavement sealants. Again, pavement sealants are not defective in and of themselves. It is just coal tar-based pavement sealants that are defective. The question of foreseeability ultimately comes down to whether it was objectively reasonable for the defendants to expect the specific danger causing the plaintiff's injury. And only if it was too remote as a matter of policy is there then no duty. Now, the cities alleged that the refiners specially formulated refined coal tars for use in pavement sealants, knowing refined coal tar was defective for that use, participated in a trade organization to advocate for that use. While government and academic researchers have concluded for decades now that use causes the harm the cities complain of. There is no public policy that refutes this duty of care. The duty of care in the face of actual knowledge that the component is defective for its intended use. Now, the refiners did point to propane to argue that knowledge does not necessarily equate to foreseeability. But everybody knows that propane can explode. Propane tanks are slathered with warnings about that very risk. And here the refiners didn't actually warn anyone of the risk. They knew full well that their refined coal tars contained dangerous uses, dangerous levels of PAHs for use to be applied on the ground outside. In sum, Your Honors, the same facts that apply to the manufacturers apply to these refiners and, therefore, the same conclusion should apply to the refiners. And for that reason, the District Court's order regarding product liability should be reversed. Turning next to jurisdiction over Beezer, the Court committed two errors in that case or on that claim. First, the District Court erred in concluding that it didn't have jurisdiction because the As the Supreme Court recently clarified in Ford, causation is not a jurisdictional question. The question is whether this suit arises out of or relates to Beezer's contacts with the State. Now, we know that Beezer once operated a facility right here in St. Paul, and PAH contamination is ongoing here in St. Paul from that operation. Beezer continues to submit annual reports to the Minnesota Pollution Control Agency. This State has and is exercising jurisdiction over Beezer for claims related to PAH contamination. The second error of the District Court was in shifting the burden to the cities, which was an error on a motion to dismiss. The burden was Beezer's to refute the allegations in the complaint. Now, the District Court gave significant weight to Beezer's affidavit, where Beezer declared that it cannot locate records of sales to Minnesota. That does not refute the city's allegations. The city has alleged that Beezer specially formulated refined coal tar for use in coal tar pavement sealants applied in Minnesota. The city has further alleged that Beezer marketed and sold coal tar pavement sealants for application in Minnesota. The declaration that Beezer cannot locate records does nothing to refute those core allegations. Beezer lived here for 60 years. It's absurd to think that they didn't sell products here. Now, you can compare Beezer's declaration, which is at Record Document 126, to Lone Star's declaration, which is at Record Document 106. Lone Star declared that they have no customers or distributors in Minnesota, that they did not use distributors to sell refined coal tar, that they do not know nor have they ever solicited business in Minnesota, and that they also do not sell their products via their website. There's a clear refutation of the city's allegations. Beezer's declaration does not amount to that. Beezer's declaration fails to address whether their distribution contracts and marketing efforts were calculated attempts to create a national market for its product, a market which specifically includes Minnesota. Now, if those errors of the district court are not sufficient for this court to reverse the district court's order in and of itself, then the district court still committed a third error, which was failing to grant the city's jurisdictional discovery on this question. Where a request for jurisdictional discovery is supported by documentary evidence, that request should be granted. Now, Beezer undoubtedly purposely availed itself of Minnesota laws and markets for over 60 years. The only question is the extent to which those contacts relate to this specific lawsuit. Now, given that Beezer is still cleaning up PAH contamination here in St. Paul, it is inconceivable that the link from Beezer to the PAH contamination in these neighboring cities will not be solidified through discovery. Through discovery, we will identify the distributors, the contractors, and we will determine whether Copper's Inc. took possession of Beezer's records when they purchased that coal tar operation from Beezer in 1988. Through that discovery, we will determine the nature and extent of Beezer's business relationship in Minnesota, the nature and extent of Beezer's distribution network for refined coal tar and coal tar pavement sealants, and finally, sales from that distribution network into and for application in Minnesota. The bottom line as to personal jurisdiction, Your Honor, is whether hailing Beezer into court in Minnesota comports with traditional notions of fair play and substantial justice. The cities were harmed by Beezer's historic operations in and sales to Minnesota.  That real property was owned or managed by Minnesota cities. So what is in the record about sales in Minnesota? Is that what you're suggesting is what you need the jurisdictional discovery to uncover? Yes, Your Honor. Okay, but as things stand, I don't think there's anything in the record saying that there were sales in the state. Is there? Not specifically, no, Your Honor, but there is substantial documentary evidence showing that Beezer, formerly known as the Copper's Company, dominated the nationwide market for both refined coal tar and coal tar pavement sealants. Counsel, was that information or evidence that was presented after sort of too late? Is that what the district court ruled? When you say that's in the record, is it actually in the complaint? Your Honor, those specific allegations are not in the amended complaint, but through multiple affidavits from multiple cities in opposition to the motion to dismiss. Record document 150-3 through 150-9, multiple cities specifically declared that their harms predated 1988, predated when Beezer sold the operation to Copper's, Inc. So that is in the record. When the district court inappropriately put, erred by putting an awful lot of emphasis on Beezer's affidavit, the cities then supported their motion for reconsideration with additional documentary evidence. And whether that documentary evidence goes to support their plausible allegations or the documentary evidence goes to support the request for jurisdictional discovery, either way, that documentary evidence is appropriately in the record, and either the district court should have reconsidered her order regarding jurisdiction over Beezer, or the district court should have branched a jurisdictional discovery. Go ahead. I was going to ask whether you wished to save any time for a bubble. Yes, Your Honor. I was just about to say that. So if there are no further questions regarding product liability and jurisdiction, thank you, Your Honors. Very well. Thank you for your argument. All right. Mr. Davis, are you going to go first? Mr. McCarthy, I'm afraid, Your Honor. All right. They have it down the other way around, but we'll hear from you first. Thank you, Your Honor. You may proceed. Mike McCarthy, on behalf of, while I represent Coppers and Beezer East in the district court, who are two defendants in the district court, I'm presenting argument in support of, on behalf of all appellees, in support of Judge Erickson's dismissal of the claims against the refiners on 12b-6, and will happily answer any questions about the dismissal of Beezer. Mr. Davis, we're hoping to give him three minutes to address the dismissal of Lone Star and Cooper's Creek. I'll start with the jurisdictional question, and it may not surprise the Court to learn that the defendants looked at this at the time. We had been out of the case for several years, the refiner defendants had, when the plaintiffs and the manufacturer defendants entered into the tolling agreement and the dismissal. Our conclusion was that this Court did have jurisdiction, and that's why we didn't raise the issue. And it is for the reason that it doesn't have to do with the 54b determination. We think the district court initially, with our support, denied a 54b determination, then mentions 54b in the order approving the dismissal of the manufacturer defendants. We don't think 54b has any role. We do think that this Court has a series of cases. Ms. Mensch mentioned one of them. Others are State of Missouri, Exerell-Nixon v. Kerdelene Tribe and Wilkinson v. Shackleford, which all follow the line of saying a plaintiff can voluntarily dismiss defendants without prejudice. And while that does have the appearance of manufacturing jurisdiction, nonetheless, you end up with a final order that is appealable and that is distinguishable from when claims against a single defendant or a ---- Do those cases include the sort of tolling agreement we have here that would essentially resuscitate, in the same case, claims that have been judgments already been entered on? So I don't believe that they do, or at least I don't recall that they do. But if the dismissal is without prejudice, then claims can be brought against those defendants again, whether there's a tolling agreement. I mean, subject to a limitation. But, I mean, that's not exactly what we have here. I mean, the case, it just strikes me on a certain level, it's very odd, that our jurisdiction depends arguably on what we decide here. So in response to that question, Your Honor, I don't think it does. I think you have a final order. They were dismissed. They were dismissed without prejudice. Whether, and that's permissible under a number of this Court's decisions, if the fact that they're dismissed without prejudice means whether there's a tolling agreement or not, that claims could be asserted against them. All the tolling agreement does is it precludes the ---- if it's asserted, it precludes an assertion of a limitations defense, perhaps. Although, to be honest, many of these claims are probably time-barred as it is. But that's not an issue before the Court. I think, so from our perspective, and again, the Court obviously may disagree, but we think the Court does have jurisdiction because under the line of cases, that allows a final judgment to be entered when defendants are dismissed without prejudice. And that the Court ---- What's the rationale for distinguishing between claims splitting against a single defendant and essentially destroying a joinder of parties? So as best I understand it, and I'm not going to claim to be a scholar of this, Your Honor, Judge Loken has written on this a number of times, and the analysis seems to be that it is that you're doing something piecemeal when you're dealing with a single defendant and that there is no obligation for a plaintiff, and a plaintiff has to bring claims against a single defendant at the same time. The plaintiff doesn't have to sue all of the ---- you know, doesn't have to sue everyone they may have a claim against at the same time. And so a plaintiff is free to select which defendants they wish to pursue claims against. And ---- Why does a plaintiff have to bring all claims against a defendant at the same time? Well, I think that's a collateral estoppel res judicata principle. But it also ---- you're going a bit beyond my analysis of the question, Your Honor, I'll acknowledge. I was content with the fact that you have a number of cases that hold it permissible. But I think the ---- Okay. The concept is ---- If you're not prepared to go beyond that, that's understandable, and we'll leave it at that. I think the concerns about it being piecemeal are greater when you're talking about claims than when you're talking about defendants. Claims against a single defendant or multiple defendants, but if you're dismissing only some claims, that's a distinct circumstance from when you have multiple defendants. And to be clear, Your Honor, your order asked about dismissals other than just the dismissal that occurred at the end. I mean, there were three parties who were wrongly named. They were affiliates of some of the remaining defendants, and they had been dismissed as a matter of course earlier in the case. And, of course, those dismissals were without prejudice. And the dismissals on jurisdictional grounds were also without prejudice, because if the Court doesn't have jurisdiction, you can't have a dismissal with prejudice of the claims against the defendant over whom the Court didn't have jurisdiction. So you have a whole series of dismissals without prejudice. So can you tell me procedurally what happens if we were to reverse, and this case goes back to the district court, what procedurally happens at the district court to resuscitate the claims against those defendants? So I won't have anything to do with that on behalf of my clients, Your Honor, but I suspect that they would have to move to amend to bring them back in. They've been dismissed. Would that be a motion to vacate the judgment? It would. I honestly, it's a better question for Ms. Mensch, I'm afraid, Your Honor. I have not thought about it. Fair enough. And to be perfectly, and I guess the last point I'll make is if the Court concludes that it only has jurisdiction if it deems the dismissals to be with prejudice, which is something this Court has done in a number of cases in the past, including the Minnesota Pet Breeders case, the appellees have no issue with that, obviously. We don't represent those defendants. They're separately represented and they're not here, but I don't have any issue if the Court deems that that's what it needs to do in order to maintain jurisdiction. This case, I mean, as you know, we were dismissed three years ago, just about three years ago. All right.  Certainly, Your Honor. On the merits, Judge Erickson should be affirmed. The cities started with a problem, as we see it, and the problem isn't simply that PAHs are in the world. If you read their complaint, you'll see that there's a certain amount of PAHs are bad and PAHs are in the world. But what their actual injury is that they allege is that if they dredge their stormwater ponds, as they're obliged to do, they may have to pay more to dispose of the dredge because of elevated levels of PAHs. And they've concluded they want somebody to pay for that, and apparently that's my clients and the other appellees that they've concluded are responsible for the level of PAHs, even though they also allege that PAHs have many, many sources in the world beyond coal tar pavement sealant. And coal tar pavement sealant has been, while it's a product that can be used in many states, it has been banned in Minnesota since 2014, and it was banned by some of the cities who are plaintiffs prior to that. So this isn't a product where there's any ongoing use in Minnesota, and they're simply looking to deal with their stormwater dredge problem by trying to have that expense tacked or assigned to my clients. Counseless, on the issue of the foreseeability, what is really the difference between the manufacturers and the refiners, at least at the 12B6 stage, when we're just looking at the complaint? I think the district court focused on the allegation that the refiner's product was used in a variety of other products. Is that all we've got here to distinguish between the two? Well, we are on 12B6, that's true. I don't know that things would change if it was a later determination, because this is a policy determination about how far does liability extend. And we don't think the district court was correct in deciding that the manufacturer defendants had a duty in this circumstance, but even if we accept that, the refiners are one step further removed. So the allegation is that the refiners should be held liable for a product that they sold as a raw material to the manufacturers. Manufacturers then put it into coal tar pavement sealant. They sold it to others, unnamed. We don't know who any of these others are. The others then either themselves applied it to driveways, or they sold it to others who applied it to driveways. We don't know who did the applying. We don't know where it was applied. They don't allege anything about that. They simply say that as a result of our clients having provided the raw material to the manufacturers, that this was applied to driveways. Then there was wind and rain and car tires, this is all in the complaint, that took particles of this and spread it throughout the environment in a way that ends up with PAHs going in their stormwater ponds. But even that, it's not just that there are PAHs in the stormwater ponds. What our clients were supposed to foresee is that then they would have to dredge the ponds, and they would do it on whatever schedule they do it such that there would be elevated levels of PAHs that they're attributing to our products, even though there are many, many sources of PAHs in the world, and that they would incur increased costs. Counsel, does that argument basically encompass the manufacturers, too? In other words, is what you're saying here an argument that the district court got it right in the refiners and wrong in the manufacturers? I'm hearing a general argument, and I'm asking to help me understand the distinction that you might be able to make between your client, the refiners, and the manufacturers. And I'm struggling to see much of a difference. Well, we're one step further removed, Your Honor. We don't know who the manufacturers sold their products to. We simply sold the raw material to the manufacturers. Do we think Judge Erickson got it right with the refiners and wrong with the manufacturers? Yes, we do. That's not before you because — Well, we're not bound by what she said as to the manufacturers, are we? You're not, but the manufacturers aren't before you because of the way this appeal has come up is all I'm saying. I mean, if we think there's not a good distinction between the two, that doesn't mean we have to rule for the plaintiffs. It does not. You could rule, as we would urge you to rule, that if there isn't a distinction between them, that foreseeability as a policy matter means that there's no duty on either the manufacturers or the refiners. The distinction you're suggesting is that you're one step removed, and when you sold to the manufacturers, you didn't know. Is that the idea that it would go into? Well, we knew it would go into coal-to-air pavement sealant. They've alleged that. We're not suggesting we didn't know that. I think what we're saying is, as a matter of policy, duty only extends so far. And the notion — I mean, there are cases in Minnesota that say you don't have a duty to a 4-year-old who climbs on a bookcase and the bookcase falls over on you. You don't have to — that's conceivable. The Minnesota law says these things can be conceivable, but that doesn't mean that they're foreseeable as a legal policy matter. And that's where this gets a little strange because it ends up being talked about as a factual matter, but really it's a policy matter, which is why I don't think it matters whether this is on Rule 12 or if it were later on Rule 56. You mean because duty is a question of law? Correct, Your Honor. Duty is a question of law, and as a result, the Court needs to determine whether now or later that whether these allegations, whether taking them as alleged, are sufficient to impose a duty. And we contend that they are not. And there's another case in Minnesota that involves a snowmobile. It's a case involving Yamaha, and a child slid down a hill in the winter, slid into the snowmobile, and was seriously injured. And the question was, was Yamaha responsible? Did they have a duty to — and it wasn't superseding cause. It was simply, did they have a duty to design the snowmobile in such a way that it wouldn't be — that a child wouldn't be injured if the child slid down the hill? And the answer was no. It's too remote. It's not that it was inconceivable. You can conceive of the fact that snowmobiles would be used on sledding hills, but that doesn't mean that the manufacturer is — has a duty to entort for an injury such as this. And here the injury is quite remote. They're not simply — you know, they're not a purchaser who's alleging — you know, the cities don't at any point say they purchased. They don't say who purchased. They don't say who applied the coal tar pavement sealant. They simply say coal tar pavement — and this is part of what Judge Erickson also focused on. It's not on the city's roads, necessarily. They're not alleging that it's on the city's roads. No, they're alleging that private individuals — Just in the vicinity of the city, apparently. They don't even allege that, Your Honor. Okay. Well, I mean, how else would it get into their storm? They allege that PAHs travel widely. They're widely dispersed. I believe that is in the amended complaint. And this was part of the problem Judge Erickson had with this complaint is that the — at one point she says, there's nothing that allows me to even infer that the — that any PAHs in the refiner's products ended up in these storm pumps. They simply state it as a conclusion, but they don't allege facts consistent with the pleading standards that would explain how it is that these PAHs from the refiners' products, the raw materials, ended up in the pumps. I do want to briefly address the fraud claims, unless the Court has more questions on the product claims. Judge Erickson was — correctly dismissed the fraud claims. The allegations amount to no more than puffery. Minnesota law is clear that puffery doesn't — that you can't obtain — you can't obtain any relief on a fraud claim if you're simply alleging puffery. And puffery includes things like our products are superior, our products are effective, our products are safe. And those are the sorts of allegations that are in the complaint with respect to the individual defendants against whom there are any allegations. There isn't anything against Beezer, for example. And then they focus on PCTC. The problems there with the PCTC allegations are two. One is there's no agency between PCTC and our clients. Our clients — PCTC isn't an agent. It's a trade association. It's not — so statements that it made are not attributable to our clients. And then beyond that, as Judge Erickson did find, statements that were made in the context of lobbying or petitioning government are protected by the First Amendment. And that is the conduct that the plaintiffs are alleging, is that PCTC was making statements in the context of trying to resist regulation of coal tar payment sealing. Are you going to address jurisdiction as well? I'm going to address it with respect to Beezer. And I'll try to do that in a minute. So — and I think that may be the only party that Ms. Minch addressed. So Beezer got out of this business in — well, by 1988 at the latest. So many, many years before this complaint was filed. And this Court's case is — the Pecoraro case is the case that Judge — I think Judge Erickson cited — says jurisdiction has to exist either at the time the complaint was filed, at the time the cause of action accrued, or shortly, in a reasonable time period prior to the filing of the complaint. So Beezer — there hasn't been jurisdiction over Beezer for any conduct in the State since the 1980s. They allege that Beezer's engaged in cleanup activity. If you look at the declaration that was filed, and the only thing in the record — I think it was Judge Kelly who asked about what was in the record. And this is an important issue. There is a lot that's been said both today and in the briefs that's not in the record on the part of the plaintiffs. But the only thing in the record is the declaration of a representative of Beezer indicating that no evidence of sales could be found in Beezer's records. So they're saying sales had to occur because it's inconsiderable that they didn't. But Beezer doesn't have records of those sales. They also didn't seek discovery. They never observed discovery. And Judge Erickson was well within her discretion to deny the belated request for discovery that was made as part of a reconsideration request. So you say it was untimely as well as — Yes. Yes. Untimely because it didn't come in until after the order dismissing Beezer? That is part of our position, yes. But it also — it was an afterthought. They didn't come in and say we need discovery. They came in and said there's jurisdiction. But if you're going to deny it, it's similar to their motion to amend, Your Honor. They put in an afterthought in the brief. They didn't file a motion to amend. They didn't seek discovery. They didn't do anything along those lines. After they lost, they sought to have — they said, well, if we lost, we should get discovery. All right. Thank you, Your Honor. All right. Mr. Davis, we'll hear from you. Ms. Mensch didn't take on your clients on the opening, so — Thank you, Your Honor. And that was going to be the first point that I would make. I mean, it's not our — it's in the briefs. Correct. But if you want to spend a couple minutes on it, we're happy to hear from you. Well, Your Honor, that is — and Andy Davis, on behalf of Cooper's Creek and Lone Star appellees here. This Court should affirm the dismissal of Cooper's Creek and Lone Star for lack of personal jurisdiction. At the threshold, the cities have waived any jurisdictional argument at all as to Cooper's Creek or Lone Star, and whether that's based on minimum contacts, conspiracy jurisdiction theory, or a theory of agency. The cities argued in their reply brief that they can make an argument as to jurisdiction any time. But if you look at the cases that the cities cited for that proposition, they are all subject matter jurisdiction cases, not personal jurisdiction cases. You mean they waived it by not — how do you say they waived it? Yes. The city waived the minimum contacts jurisdictional argument by never raising it in the district court below. The cities waived their conspiracy jurisdiction theory and their agency theory by failing to raise it in their opening brief on appeal. You're saying they switched rationale? They never raised minimum contacts below. They did raise conspiracy jurisdiction below, but when they got to the appeal, it was nowhere to be found. They didn't bring it up until the reply brief, and they say we can bring it up any time we want. They cite subject matter jurisdiction cases for that proposition, which is, of course, a completely different body of law. Even setting aside the waiver argument, the cities cannot show personal jurisdiction under any theory. As noted, they didn't pursue minimum contacts below. Nothing in the record below establishes any contacts between Lone Star, Cooper's Creek, and Minnesota. Without minimum contacts, there can simply be no conspiracy jurisdiction at all, so that's a fatal flaw in the city's argument. Without some due process minimum contacts, their conspiracy theory of jurisdiction cannot succeed. So my time is up, but in the final analysis, the Court simply does not need to reach any of the disfavored jurisdictional theories that the city has raised because they have all been waived. So unless Your Honors have any questions, I will yield back to Ms. Mensch. Very well. Thank you. Thank you. Ms. Mensch, we'll hear from you in rebuttal. Thank you, Your Honors. First, there are a few points I wanted to quickly clarify. The cities did plausibly allege that coal tar pavement sealants are the source of the harms that the cities now face. The United States Geological Survey concluded as much. If you look at our allegations on paragraphs 74 and 77, the USGS concluded that where coal tar pavement sealants are used, they are finding PAHs a thousand times higher than they are in parts of the country where only asphalt-based pavement sealants are used. At paragraph 77, the USGS concluded that coal tar pavement sealants are the largest active source of PAHs in the country, releasing more each year than the entire vehicle fleet in the United States. Now, the refiners just pointed to, you know, not finding foreseeability when a bookcase fell over. That's not quite what happened in that case. When that bookcase fell over, the parent of that child was there and aware of the risk. Here, no one was aware of the risk except for the refiners and later the manufacturers. You asked if duty is a question of law. Your Honors, duty is a question of policy. And, in fact, the question of duty can go to the jury if it's a close question, if it's a question of fact. Similarly, agency is a question of fact. As to Lone Star and Cooper's, obviously, we don't have time today to address all of the claims brought by the city. But as to specifically jurisdiction over Lone Star and Cooper's, the cities did raise tortuous conduct, Lone Star and Cooper's tortuous conduct, in Section 2C of their opening brief. Now, we have not made arguments regarding minimal contacts, as I stated in my opening argument. Lone Star's declaration on that point was quite convincing. But in Minnesota, Minnesota does exercise conspiracy-based jurisdiction to bring participants in an act of conspiracy into the case when that conspiracy targets this State.  The PCTC was targeting any jurisdiction that was passing bans of the use of refined coal tar in pavement sales. That was the PCTC's mission. And that was the conspiracy that all of the refiners engaged in to make sure to prevent, to delay, Minnesota or any Minnesota city from enacting a ban from these dangerous products. Your Honors, the cities presented plausible allegations. On a motion to dismiss, that is all that was required. The cities alleged that the refiners knew their products would cause environmental contamination and yet continued to design and sell refined coal tars for use in pavement salience, continued to market and advocate for the use of refined coal tar in pavement salience, while failing to warn users or anyone of the known consequences of that use. The cities seek their day in court and ask you to reverse the orders of the District Court below. On the jurisdictional point, if the case were reversed, what would happen in the District Court? Your client would have the option to reinstate the claims against the dismissed defendants, and you would do that by moving for leave? Excuse me. Moving for leave to amend the complaint, would that be the procedure? Thank you, Your Honor. I believe so, yes. We would have to move to amend the complaint to take into account the orders of this Court and reintegrate all of the defendants into the action below. So you would move to amend the complaint to bring back the defendants who were in originally and were dismissed without prejudice? Your Honor, I'm not sure procedurally what would be required. I think whether we would move to vacate the voluntary dismissal in light of the tolling agreement. But the bottom line is that the manufacturers below and the cities did work to resolve their claims, worked to settle their claims for eight months to a year after the orders at issue before this Court. We were unable to do so because the one thing the manufacturers and the cities agreed on was that we needed the refiners to make a decision. And so for that reason, the cities... or whatever, couldn't be resolved. But there was a question earlier about procedurally how it would work on remand. So I was just trying to get that cleared up. You're not sure, it sounds like. You don't know what you're going to do. I thought you had it all set up with this tolling agreement so that it would flow from that. Yes, so it would flow from that so that... You just said you're not sure if you'd vacate the dismissal or if you would move to amend. Procedurally, I'm not sure what the correct answer would be on the district court now. All right. Well, thank you for your argument. Thank you, Your Honors. Thank you to all counsel. The case is submitted and the court will file a decision in due course. Counselor excused. Thank you for your arguments.